IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHNNIE FLOURNOY, #B61265,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC., and<br>ILLINOIS DEPARTMENT OF CORRECTIONS,<br><br>　　　　　Defendants. | Case No. 20-cv-1357-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a motion for summary judgment on the affirmative defense of release filed by Defendant Wexford Health Sources, Inc. (Doc. 41). Plaintiff filed responses in opposition. (Doc. 46, 47, 48).[1] For the following reasons, the motion is granted.

## BACKGROUND

Flournoy, an inmate at the Illinois Department of Corrections (IDOC) who is currently housed at Pinckneyville Correctional Center (Pinckneyville), commenced this action pursuant to Section 1983 for the deprivation of constitutional rights and pursuant to the Americans with Disabilities Act and the Rehabilitation Act. Relevant to the motion for summary judgment filed by Defendant Wexford Health Sources, Inc. (Wexford), Flournoy claims that while incarcerated at

---

[1] Doc. 47 filed by Plaintiff is titled as a response in opposition to Wexford's "motion for summary judgment for deliberate indifference to a serious medical need and for failure to exhaustion remedies." The response was filed on June 13, 2023. However, the Court had previously denied the motion for summary judgment on exhaustion on March 23, 2023, without prejudice so that the parties could first address the affirmative defense of release of claims. (Doc. 38). Doc. 48 is titled "emergency filing" and is supplement to Plaintiff's response at Doc. 46. Because Plaintiff is proceeding pro se, the Court will construe Doc. 46, 47, and 48 together as a single response in opposition to the motion for summary judgment on the affirmative defense of release of claims.

Lawrence Correctional Center (Lawrence) and Pinckneyville, he has been denied proper treatment for medical conditions affecting his eyes and throat in violation of the Eighth Amendment and state law (Counts 1, 4, 5). (*See* Doc. 11). Regarding adequate treatment for his eyes, Flournoy asserts that because Wexford has a cost cutting policy and practice, he has not received timely refills of his eye medications, he was not treated by knowledgeable medical professionals, and he has not been taken back to an outside hospital for follow up treatment of an eye infection. For his throat condition, Flournoy asserts that Wexford's efforts to reduce costs have resulted in him not being able to receive the surgery that had been recommended by one of his treating physicians.

After the Court entered the Initial Scheduling Order in this case, staying merits discovery and allowing discovery on the issue of whether Plaintiff had exhausted his administrative remedies (Doc. 31), Defendant Wexford filed a motion requesting the Court to bifurcate the issue of whether Plaintiff released the claims alleged in this lawsuit. (Doc. 32). Wexford asserted that on November 10, 2021, Plaintiff and Wexford entered into a settlement agreement that contained a provision releasing Wexford from any claim Plaintiff may have against Wexford that arose on or before November 10, 2021. The Court denied the motion to bifurcate. (Doc. 38). The Court agreed, however, that the threshold issue of release of claims could be dispositive of all counts against Wexford and should be examined prior to addressing exhaustion. The parties were allowed to engage in limited discovery exclusive to the issue of release of claims, and deadlines were set for briefing the issue. On May 22, 2023, Wexford filed the motion for summary judgment on its affirmative defense of release of claims that is now before the Court. (Doc. 41, 42).

**ARGUMENTS**

Defendant Wexford states that on November 4, 2017, Plaintiff, through counsel, initiated the case *Flournoy v. Obaisi* in the Northern District of Illinois against Wexford. (Doc. 42, p. 1) (citing Case No. 17-cv-7994 (N.D. Ill. Nov. 4, 2017)). After Plaintiff filed this lawsuit on

December 22, 2020, the parties in *Flournoy v. Obaisi,* reached a binding settlement agreement on the record on November 4, 2021. As part of the settlement, in exchange for a cash payment, Plaintiff agreed to release Wexford from all claims based on acts that occurred prior to November 10, 2021, the date the settlement agreement was signed by Plaintiff. Wexford argues that because this suit concerns alleged acts or omissions that are said to have occurred prior to November 10, 2021, the allegations in this suit are included in the claims that the parties identified would be released in *Flournoy v. Obaisi.* Accordingly, Plaintiff has released the claims alleged in this suit against Wexford, and Wexford is entitled to judgment as a matter of law. (*Id.* at p. 7).

In response, Plaintiff asserts that he was not aware of the release language in the settlement agreement when he signed the document. (Doc. 46, p. 3). He contends that during the settlement conference this provision was not discussed. (*Id.* at p. 2). Specifically, he states, "There was no condition nor anything else other than a monetary judgment that was the whole settlement agreement, and Wexford accepting no liability." (*Id.*). Plaintiff recounts that the day following the settlement conference, a man and women brought him a document for his signature, but because he has impaired vision[2] he could not read the document. (*Id.* at p. 3). The woman pointed out on the document where Plaintiff was supposed to sign. (*Id.*). A week later, a copy of the final settlement agreement arrived in the mail. (Doc. 47, p. 2). A fellow inmate read the agreement to Plaintiff, and it was at this point that Plaintiff learned that the settlement agreement included language stating that he, Plaintiff, "would not sue Wexford anymore." (Doc. 46, p. 3; Doc. 47, p. 2). Plaintiff had his nephew phone his attorney, Michael Jarard. (Doc. 47, p. 2). Jarard came to Pinckneyville a few days later, and Plaintiff tried to discuss the release language and inform Jarard that he never agreed to this provision. (*Id.*). Jarard became defensive and stated that the language

---

[2] Plaintiff states he is completely blind in his left eye and only has partial vision in his right eye. (Doc. 46, p. 25).

was standard. (Doc. 46, p. 27). Jarard then changed the subject and discussed finalizing payment for attorney and expert witness fees. (Doc. 47, p. 2; Doc. 46, p. 3, 27). Plaintiff asserts that he did not receive a complete answer about the release language from Jarard, who "hurried up and left." (*Id.*).

Plaintiff goes on to state that he has only recently learned that Jarard appeared in court in *Flournoy v. Obaisi* on December 6, 2021, and dismissed another part of his suit without his knowledge. (Doc. 46, p. 3, 13). Plaintiff has filed a motion for sanctions in that case requesting for the Northern District Court to strike everything from the settlement that he did not agree to or know about at the time of signing the settlement agreement. Plaintiff has also filed a complaint against Jarard with the Illinois Attorney Registration and Disciplinary Commission. (Doc. 48). Plaintiff asserts that he has never knowingly signed or agreed to anything about not suing Wexford again and has not given up his rights to claims he now has against Wexford in this lawsuit. (*Id.* at p. 27). He states that Wexford continues to ignore his requests for medical treatment and has exposed him to unnecessary pain. (Doc. 47, p. 7).

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most

favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Donahoe*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc*., 756 F.3d 542, 544 (7th Cir. 2014).

Settlement agreements can contain "releases whereby a party abandons a claim to the person against whom the claim exists." *Ramos v. Piech,* 55 F. 4th 1118, 1121 (7th Cir. 2022)(internal citations and quotations omitted). "A release of legal claims is governed by contract law – here…the law of Illinois." *Patel v. CBRE, Inc.,* 795 F. App'x 461, 462 (7th Cir. 2020). *See also Sims-Madison Inland Paperboard and Packaging, Inc.,* 379 F. 3d 445, 448 (7th Cir. 2004) ("Issues regarding the formation, construction, and enforcement of settlement agreements are governed by state contract law"). Under Illinois law, "[i]f the words in the contract are clear and unambiguous, they must be given their plain, ordinary and popular meaning." *Thompson v. Gordon,* 948 N.E. 2d 39, 47 (Ill. 2011). Thus, when a general release of claims is clear and explicit, the court must enforce the provision as written. *Hampton v. Ford Motor Co.,* 561 F. 3d 709, 714 (7th Cir. 2009). "Both the meaning of the instrument, and the intention of the parties must be gathered from the face of the document without the assistance of parol evidence or any other extrinsic aids." *Cannon v. Burge,* 752 F. 3d 1079, 1088 (7th Cir. 2014) (quoting *Rakowski v. Lucente,* 472 N.E. 2d 791, 794 (1984)). When there is a written contract in evidence, the intention or understanding of the parties is "determined not from what the parties thought but from the language of the contract itself." *Rakowski,* 472 N.E. 2d at 794 (citations omitted). "Once a defendant establishes the existence of a release that is legal and binding on its face, the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence." *Cannon,* 752 F. 3d at

1093.

## ANALYSIS

The language of the General Release is unambiguous. The document is titled "General Release of All Claims." (Doc. 42-1). The relevant provision of the General Release provides that in exchange for consideration Plaintiff agreed to release as to Wexford:

> [A]ll claims…whether known or unknown, the [Plaintiff] may now have, or have ever had or may have in the future arising out of or relating to any actual or alleged acts or omissions that occurred through the date of this General Release."

(Doc. 42-1, p. 1). Thus, it is clear that the General Release of Claims precludes Plaintiff from bringing suit against Wexford based on events that occurred before Plaintiff signed the settlement agreement. *See Buford v. Goeser,* No. 23-1395, 2023 WL 8274531, at *1 (7th Cir. Nov. 30, 2023) (finding similar language "a full, final, and complete compromise of a disputed claim"). Plaintiff filed suit in this case on December 22, 2020, and an amended complaint on September 2, 2021. In the Amended Complaint he alleges that Wexford had a cost saving policy that resulted in constitutionally inadequate care for his eye and throat conditions. Plaintiff's Eighth Amendment and state law claims against Wexford predates the signing of the settlement agreement, and thus, falls within the scope of the General Release. *See Capocy v. Kirtadze,* 183 F.3d 629, 634 (7th Cir.1999) ("Illinois courts read general releases to include claims of which the parties were aware at the time of the release's execution.").

Plaintiff argues that the broad release terms are invalid because he did not agree to nor was he aware that these provisions were included in the settlement agreement. He asserts that Wexford attorneys and his attorney, Jarard, perpetrated fraud in order to have him sign the General Release. Plaintiff's argument that the General Release is unenforceable because it was fraudulently induced fails. Under Illinois law, a party seeking to set aside an otherwise enforceable contract on the basis of fraudulent inducement must prove the following elements by clear and convincing evidence:

> (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.

*Central States, Southeast v. Stewart,* 2015 WL 7568390, at *4 (N.D. Ill. Nov. 25, 2015) (citing *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003)).

Other than conclusory statements, Plaintiff has not offered any evidence to establish a genuine issue of fact on his assertion of fraud. *Montgomery v. American Airlines, Inc*., 626 F.3d 382, 389 (7th Cir.2010) ("mere conclusory allegations do not constitute evidence"). The only evidence Plaintiff has provided the Court in support of fraud are copies of documents relating the complaint he has filed with the Attorney Registration and Disciplinary Commission against his attorney, Jarard. (Doc. 48, p. 7-8). One document is a letter that Jarard has written in response to the complaint. In the letter, Jarard contradicts Plaintiff's claim that he, Plaintiff, was not informed about the General Release prior to signing. Jarard writes, "I advised [Plaintiff] of the contents of the "General Release" he has attached to this complaint." (*Id.* at p. 7). Plaintiff's documents filed with the Attorney Registration Commission and Jarard's responding letter do not point to fraud but only serve to demonstrate that Plaintiff is dissatisfied with Jarard's representation. If Plaintiff believes that Jarard did not properly communicate with him regarding the provisions of the General Release, his "remedy lies in malpractice rather than invalidating the settlement agreement." *Douthit v. Univ. Health, Inc.,* No. 20-cv-03165-JMS-DLP, 2022 WL 18356368, at *4 (S.D. Ind. Aug. 18, 2022) (citations omitted). *See also Taylor v. Gordon Flesch Co., Inc.,* 793 F. 2d 858 (7th Cir. 1986).

Furthermore, Plaintiff does not assert that he requested and was denied the opportunity to have someone read the settlement agreement to him before signing. He states that when staff brought him the settlement agreement to sign, he informed them he could not see the words and

could not read where to sign. A staff member pointed to the location on the page where Plaintiff should sign, obtained his signature, and then left. (Doc. 28, p. 2; Doc. 46, p. 3, 6; Doc. 47, p. 2; Doc. 48, p. 16). There are no allegations that he requested for staff to read him the document or for his ADA aid to be present and read it to him. (Doc. 48, p. 16). He also does not assert that he asked to first consult with his attorney prior to signing the settlement agreement. Because he was given a copy and had an opportunity to discover the alleged fraud by having the settlement agreement read to him prior signing, his assertion of fraud necessarily fails. *See Seward v. B.O.C. Div. of General Motors Corp.,* 805 F. Supp. 623 (N.D. Ill. Oct. 26, 1992) (citing *Belleville Nat'l Bank v. Rose*, 456 N.E.2d 281, 284 (Ill. App. Ct. 1983) (defense of fraud unavailable to avoid the effect of written agreement where complaining party could have discovered the fraud by reading the instrument)). Accordingly, there is nothing from the record from which a reasonable jury could conclude that Plaintiff was fraudulently induced into signing the settlement agreement.

Plaintiff further argues that the General Release is invalid because prior to the settlement in *Flournoy v. Obaisi*, he was told by a Wexford attorney that if the same deliberate indifference continued, he could file a lawsuit under the continued violation doctrine. (Doc. 46, p. 2). The Court is unsure how this statement by the Wexford attorney precludes the claims in this case from falling under the General Release. Contrary to Plaintiff's assertion, the General Release does not contain a provision stating he can no longer sue Wexford. (Doc. 46, p. 3). A blanket release of claims "that are not within the contemplation of the parties" is prohibited under Illinois law. *Ramos,* 55 F. 4th at 1121 (internal quotations and citations omitted). A general release typically covers only "claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry." *Fair v. Int'l Flavors & Fragrances, Inc*., 905 F.2d 1114, 1116 (7th Cir.1990) (internal quotations and citations omitted). As discussed above, the language of the General Release is clear. Plaintiff is only barred from suing Wexford based on acts or omissions that "occurred through the

date of [the] General Release." Plaintiff filed this lawsuit and the Amended Complaint before settling *Flournoy v. Obaisi,* and therefore, the claims in this case were "within the contemplation of the parties" at the time Plaintiff signed the General Release. The General Release does not afford Wexford blanket immunity from all lawsuits.

Finally, Plaintiff's assertion that he continues to experience inadequate medical care also does not impact the applicability of the General Release. The Amended Complaint alleges claims based on conduct that occurred prior to August 29, 2021, when he drafted the Amended Complaint. (*See* Doc. 10, p. 13). To the extent Plaintiff is asserting that his rights have continued to be violated after filing the Amended Complaint, those allegations are not before the Court, as a "complaint can seek relief only for events that have already occurred." *Chi. Reg'l Council of Carpenters v. Vill. of Schaumburg*, 644 F.3d 353, 356 (7th Cir. 2011). Plaintiff never filed a motion to supplement the Amended Complaint to encompass events that happened after he had filed it, and he cannot amend the Amended Complaint through his responses in opposition to the motion for summary judgment. *See* FED. R. CIV. P. 15(d). If Plaintiff believes that treatment decisions made or the medical care provided to him after he filed his Amended Complaint continued to violate the law, "he must raise those clams in a new lawsuit." *See Strasser v. Tondkar,* No. 21-C-1257, 2023 WL 8186457, at *3 n. 1 (E.D. Wisc. Nov. 27, 2023). The Court expresses no opinion on the merits of any such claims. The Court further notes that if Plaintiff desires to modify the settlement agreement based on mistake or mutual mistake, he may be able to seek relief by commencing a new action for reformation of the settlement agreement in a court of proper jurisdiction. Again, the Court expresses no opinion as to the legal merit of pursuing this option.

Because there is no issue of material fact regarding the validity of the General Release and its applicability to Plaintiff's claims against Wexford in this case, the motion for summary judgment will be granted.

**DISPOSITION**

For the reasons stated above, the Court **GRANTS** the Motion for Summary Judgment filed by Defendant Wexford Health Sources, Inc. (Doc. 41). All claims against Wexford Health Sources, Inc. (COUNTS 1, 4, and 5) are **DISMISSED with prejudice**. The Clerk of Court shall terminate Wexford Health Sources, Inc. as a defendant and enter judgment in favor of this Defendant at the conclusion of the entire action.

Plaintiff's claim against the Illinois Department of Corrections brought pursuant to the Americans with Disabilities Act and the Rehabilitation Act (COUNT 2) is the only remaining claim in this case. The Illinois Department of Corrections did not file a motion for summary judgment on the issue of exhaustion by the deadline of July 28, 2023 (Doc. 31), so the affirmative defense is **DEEMED WAIVED.** A new scheduling order establishing deadlines for merit-based discovery and dispositive motions shall be entered by separate order.

**IT IS SO ORDERED.**

**DATED:   March 18, 2024**

        *s/Stephen P. McGlynn*
**STEPHEN P. MCGLYNN**
**United States District Judge**